PEOPLE v HAMM

Docket No. 59946. Submitted July 21, 1982, at Detroit.—Decided October 7, 1982. Leave to appeal applied for.

William E. Hamm was convicted in a jury trial of first-degree murder and assault with intent to commit murder, Oakland Circuit Court, James S. Thorburn, J. Hamm had been convicted of these crimes previously in a bench trial, but those convictions were reversed on appeal. *People v Hamm*, 100 Mich App 429 (1980). Defendant appeals from the jury convictions, alleging that there was insufficient evidence of deliberation to support his conviction of first-degree murder and that his retrial was barred by double jeopardy. *Held:*

1. Sufficient evidence was presented at trial to enable the jury to find that both deliberation and premeditation were proven beyond a reasonable doubt. The evidence suggested that, prior to the offense, the defendant had considered several alternatives to the killing of his victim.

2. Language in the previous Court of Appeals opinion, upon which the defendant bases his double jeopardy argument, was dicta, not essential to the holding in that opinion, and is not binding on the Court of Appeals. That dicta was a conclusion based upon a hypothesis regarding testimony which had not been presented in the prior trial. In the second trial, the testimony was presented and it was not favorable to the defendant. Defendant's second trial was not a violation of the constitutional prohibition of double jeopardy.

Affirmed.

1. Homicide — First-Degree Murder — Premeditation and Deliberation.

To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem; premeditation and deliberation characterize a thought process undisturbed by hot blood and, while the minimum time neces-

References for Points in Headnotes
[1, 2] 40 Am Jur 2d, Homicide § 52.
[2] 5 Am Jur 2d, Appeal and Error § 883.
[3] 5 Am Jur 2d, Appeal and Error § 760.

sary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time for a "second look" at the nature of his response.

2. Homicide — First-Degree Murder — Premeditation and Deliberation — Appeal.

Premeditation and deliberation are subjective factors which may be established by inference from all the facts of the case; upon appeal from a conviction of first-degree murder the Court of Appeals must determine if sufficient evidence was presented to enable a rational trier of fact to find that all the essential elements of the crime, including premeditation and deliberation, were proven beyond a reasonable doubt.

3. Appeal — Criminal Law — Double Jeopardy — Dicta.

Dicta in a prior Court of Appeals decision in which it was hypothesized that, if certain testimony had been produced, the defendant may have been acquitted does not bar a retrial of the defendant where the conviction was reversed in that decision on other grounds; the dicta does not constitute a factual finding, being based upon conjecture regarding the content and the effect of testimony which was not presented at trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gerald H. LaDue,* Special Prosecuting Attorney, for the people.

*Bruce T. Leitman,* for defendant on appeal.

Before: M. F. Cavanagh, P.J., and D. C. Riley and C. J. Hoehn,* JJ.

Per Curiam. Following a jury trial held in Oakland County Circuit Court, defendant William Ernest Hamm was found guilty of first-degree murder, MCL 750.316; MSA 28.548, and assault with intent to commit murder, MCL 750.83; MSA 28.278. On July 22, 1981, he was sentenced to natural life imprisonment on the first-degree murder offense and to life imprisonment on the assault

---

* Circuit judge, sitting on the Court of Appeals by assignment.

with intent to commit murder offense. Defendant appeals as of right.

This is the third time this case has been before us. In the first appeal, *People v Hamm,* 79 Mich App 281; 261 NW2d 288 (1977), *lv den* 402 Mich 888 (1977), we upheld the trial court's *sua sponte* declaration of a mistrial and remanded. In the second, *People v Hamm,* 100 Mich App 429; 298 NW2d 896 (1980), we reversed defendant's convictions, holding that defendant's original waiver of jury trial did not apply to subsequent trials. In the present appeal, defendant contends that there was insufficient evidence of deliberation presented at trial and that his first-degree murder conviction must be reduced to second-degree murder. A brief recitation of the facts will help facilitate a clear understanding of the issues involved.

On December 27, 1974, defendant sustained a head injury. Although the prosecution introduced substantial evidence which tended to show that prior to this accident defendant was an alcoholic, given to fits of violence and antisocial behavior, there is little doubt but that this head injury had a drastic effect upon defendant's life. As a result of this injury, a subdural hematoma, defendant was forced to undergo brain surgery.

There is evidence that, after the brain surgery, defendant was mentally ill, psychotic, and delusional. The leitmotif of defendant's delusion was that he had been poisoned with arsenic. It was undisputed that defendant believed that the arsenic was causing him crippling pain, making him impotent, deteriorating his bones, and slowly bringing about his imminent death.

In April, 1975, defendant was admitted to a local hospital's psychiatric ward. During defendant's hospitalization, Dr. Charles Hoyt became his treat-

ing physician. There was testimony that Dr. Hoyt became a focal point of defendant's delusions and that defendant became consumed by the false belief that Dr. Hoyt was conspiring with local doctors to prevent him from obtaining treatment for his supposed arsenic poisoning.

Defendant became increasingly preoccupied with his delusions and began to express openly his intent to take Dr. Hoyt's life. On the night of the murder, July 11, 1975, defendant went home and picked up a .22 caliber rifle. He went to a local bar where he made an unsuccessful attempt to obtain .22 caliber shells for the rifle. He then left the bar and proceeded to the home of a friend whom he asked for some .22 caliber shells or a shotgun and shells. When asked why he wanted the shells, defendant replied "to kill Dr. Hoyt". Defendant's friend attempted to calm him down and the two discussed defendant's problem and several options open to defendant, such as having his father help him, or going to the police, or prosecuting attorney. Thereafter, defendant left his friend's home and went to two other locations in an unsuccessful attempt to find .22 caliber shells.

Later that night, at approximately 2 a.m., Dr. Hoyt and his wife were awakened by the sound of breaking glass. Mrs. Hoyt observed the defendant breaking out a bedroom window with the butt of a rifle. After breaking the glass, defendant entered the home and began to beat Dr. Hoyt with the rifle and, thereafter, repeatedly stabbed Dr. Hoyt with a broken shard of glass. Dr. Hoyt told his wife to run for help and, as she attempted to do so, defendant stabbed her in the back with the same shard of glass which he had used against her husband. After Mrs. Hoyt managed to escape, defendant ran back and resumed his attack on Dr.

Hoyt who, at that point, was still alive. Dr. Hoyt subsequently died from a wound to the heart.

Defendant's contention that there was insufficient evidence of deliberation is based upon his interpretation of MCL 750.316; MSA 28.548. Defendant contends that one deliberates in terms of that section only when one considers the option of whether to solve one's dilemma by killing or not killing, and then opts to kill intentionally. Defendant reasons that his mental illness and insane delusions precluded his consideration of rational, viable alternatives to killing Dr. Hoyt and, therefore, there was no deliberation.

In support of this contention, defendant relies upon the following language from *People v Morrin,* 31 Mich App 301, 329; 187 NW2d 434 (1971): "[T]o deliberate is to measure and evaluate the major facets of a choice or problem."

We are not inclined to give MCL 750.316 the construction urged by defendant. Neither the cases cited by the *Morrin* Court in support of the cited passage, the *Morrin* case, nor the cases decided since *Morrin* have applied such a definition of the element of deliberation.

If the cited passage is read in context, it is clear that the *Morrin* Court did not intend to define the element of deliberation so narrowly.

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the

nature of his response to a 'second look'." *Morrin, supra,* pp 329-330.

Premeditation and deliberation are subjective factors and may be established by inference from all the facts of the case. *Morrin, supra,* p 331. Upon appeal, we must determine whether sufficient evidence has been presented to enable a rational trier of fact to find that all the essential elements of the crime have been proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), *cert den* 449 US 885 (1980). A careful review of the record indicates that there was sufficient evidence presented at trial to enable the jury to find that the elements of both deliberation and premeditation were proven beyond a reasonable doubt.

In any event, there was ample evidence to suggest that defendant considered several alternatives to killing Dr. Hoyt. Defendant had considered going to his father for help, suing Dr. Hoyt in a civil action, calling the police or prosecuting attorney, or shooting Dr. Hoyt in the legs and making him "confess" to defendant's father. Therefore, even under the defendant's standard for determining deliberation, there was sufficient evidence to sustain a conviction.

Finally, we reject defendant's claim that his retrial was barred by the protections against double jeopardy. Defendant's claim of double jeopardy is based on this Court's dicta in *People v Hamm,* 100 Mich App 429, 438; 298 NW2d 896 (1980). In that case, we reversed defendant's conviction on the ground that defendant's original waiver of jury trial in a previous trial did not apply to subsequent trials. Based upon this disposition, we expressly declined to rule on defendant's claim that he had been prejudiced by the failure of the prose-

cution to call certain of its rebuttal witnesses who would have substantiated his claim of innocence. However, realizing that this issue might arise again on retrial, we attempted to provide some guidance for the trial court, stating:

"Based on defendant's allegation that Dr. Short had found defendant to be not criminally responsible, the prosecutor's failure to produce this rebuttal witness at trial was error. This omitted evidence would have created a reasonable doubt that did not otherwise exist and, therefore, the prosecutor should have disclosed this evidence." *Hamm, supra,* pp 437-438.

Defendant seizes upon the quoted language in support of his claim of double jeopardy. More specifically, defendant argues that the quoted language constitutes a factual finding that, if the evidence had been introduced, defendant would have been acquitted and, therefore, the Double Jeopardy Clauses of the state and federal constitutions prohibit his being retried.

As discussed above, this quoted language was not essential to our holding in the second *Hamm* appeal and, therefore, we are not bound by it.

It should also be noted that this same argument was raised by defendant after the defendant's second trial in the form of a post-trial motion for a new trial. After hearing the arguments of counsel and reviewing the report of Dr. Short, the trial court denied defendant's motion for a new trial finding that nothing in the opinion of Dr. Short would have changed the court's verdict. Apparently, this fact was not brought to the attention of the panel of this Court which decided the second *Hamm* appeal.

Secondly, it should be noted that Dr. Short did testify before the jury in this trial and, further-

more, he testified that defendant was legally sane at the time he killed Dr. Hoyt.

In any event, defendant's reliance upon *Burks v United States*, 437 US 1; 98 S Ct 2141; 57 L Ed 2d 1 (1978), is misplaced. Defendant cites *Burks* for the proposition that an appellate determination, whether correct or erroneous, that evidence presented at trial was insufficient to sustain a guilty verdict prohibits the defendant's retrial under the Double Jeopardy Clause.

There is a significant distinction between *Burks* and the instant case. In *Burks* and the other cases relied upon by defendant, an appellate court examined the evidence presented *at trial,* and concluded from a review of that evidence that it was insufficient to sustain a conviction. In *People v Hamm,* 100 Mich App 429, the appellate court *did not* review evidence presented at trial and find it to be insufficient. What it did do was hypothesize its own conclusion as to what the testimony of Dr. Short would be and, from that guess as to the content of the testimony, conclude that a reasonable doubt would have been created. No federal or state court has gone so far as to hypothesize what testimony would have been, disregard the entirety of what the trial testimony actually was, and hold that, based on the hypothesized testimony, a reasonable doubt would have been created. We decline to be the first.

Defendant's retrial did not violate the constitutional prohibition of double jeopardy.

Affirmed.